UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOB J. DANLEY and
JEFFREY J. MACINTYRE, JR.,

       Plaintiffs,

vs.                                 Case No. 15-CV-11535

                                     HON. GEORGE CARAM STEEH

ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC, and
MIDLAND CREDIT MANAGEMENT, INC.,

       Defendants.
_____/

ORDER DENYING DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION WITHOUT PREJUDICE [DOC. 27]

Plaintiffs filed this case under the Fair Debt Collection Act and Michigan Collection Practices Act. Defendants purchase credit card debts from banks and other debt buyers after the bank has charged off the debts. Under federal banking regulations, a credit card debt must be charged off when it is 180 days overdue. Charge-off means that the credit card receivable is no longer carried on the bank's books as an asset. As a standard practice, most banks waive interest on credit card debts after charge off because banks are not required to send periodic statements for an account that has been charged off. Plaintiffs allege that defendants added interest to debts for the period after charge off and waiver by the original bank creditor.

Plaintiffs argue that defendants did not purchase the right to add or reassess or collect interest once it had been waived and extinguished by the bank. Nonetheless,

-1-

defendants made efforts to collect the post charge-off interest from the debtors whose accounts they purchased. For those debtors who did not pay in response to the telephonic and mail collection actions, defendants filed lawsuits against the debtors.

In this lawsuit, plaintiffs allege defendants violated various sections of the federal and Michigan collection statutes by adding and attempting to collect interest that has been charged off by the original owner of the debt. The matter is presently before the court on defendants' motion to compel arbitration, and dismiss plaintiffs' case, pursuant to the arbitration clauses contained in the credit card agreements allegedly entered by plaintiffs and the banks.

1. Plaintiff Danley's Citibank Credit Card Account

Plaintiff Jacob J. Danley opened a credit card account issued by Citibank on April 6, 2009, with an account number ending in 5718. Defendants' Exhibit C includes a *sample* of the credit card agreement that allegedly governed Danley's Citibank account on the date of charge off. (Dec of Michael Berger, ¶ 8; Citibank letter in response to subpoena, Ex. C, p. 1). Danley made purchases on the account, and stopped making payments on July 23, 2009. The account was charged off on March 16, 2010.

The sample credit card agreement contains an arbitration provision:

> Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> * * *
>
> Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent,

representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

The arbitration provision also contains a class action waiver provision: "Claims and remedies sought as part of a class action . . . are also subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis."

The arbitration agreement provides that it is "governed by the Federal Arbitration Act (the "FAA")."  (Ex. C, p. 214).  The Credit Card Agreement provides that Citibank may assign the Agreement: "We may assign any or all of our rights and obligations under this Agreement to a third party."  (Ex. C, p. 217).  The arbitration provision states that it "shall survive: (I) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity."  (Ex. C, p. 217).

On March 29, 2013, Citibank allegedly sold and assigned Danley's Citibank Account to Thunderbolt Holdings.  The Bill of Sale and Assignment in Exhibit A states that it assigns "the Accounts described in Exhibit 1 and the final electronic file."  Exhibit 1 redacts all of the Account information, and there is no electronic file provided in the exhibits.  On the same date, Thunderbolt allegedly sold and assigned the Citibank Account to defendant Midland Funding.  Again, all references to accounts have been redacted.  Exhibit B is an abstract of data from the Excel file pertaining to Danley's Citbank account, allegedly contained in the electronic records provided by Thunderbolt in connection with the sale of accounts by Thunderbolt to defendants.

2. <u>Plaintiff McIntyre's Citibank Home Depot Credit Card Account</u>

Jeffrey J. McIntyre, Jr. opened a Home Depot branded credit card account issued by Citibank on September 25, 2003, with an account number ending in 8762. The Citibank Home Depot Account was governed by a Credit Card Agreement. (Berger Dec. ¶ 13). The Credit Card Agreement is embedded in an account statement from January 2009 and is attached as Exhibit C to Berger's Declaration. (Ex C, pp. 1, 140-47). McIntyre stopped making payments on the Citibank Home Depot Account by August 31, 2009. The Account was charged off on April 6, 2010.

The Citibank Home Depot Account Credit Card Agreement had the same provisions as described above with regard to the purported Danley Citibank Credit Card Account. This includes the arbitration provision, class action waiver, Federal Arbitration Act, Assignment provision, and arbitration survival provision.

Pursuant to the Bill of Sale and Assignment executed on March 23, 2011, Citibank purportedly sold and assigned the Citibank Home Depot Account to Midland Funding. (Berger ¶ 12). The Bill of Sale states that it includes the "Accounts described in Exhibit 1 and the final electronic file." (Exhibit D). However, Exhibit 1 has the word "redacted" where the accounts should be listed, and an Affidavit of Sale of Account states that "[a]s part of the sale of the Accounts, certain electronic records were transferred on individual accounts to the debt buyer. These records were kept in the ordinary course of business of creditor." (Exhibit D). Exhibit E is an abstract of the data from the Excel file pertaining to the McIntyre Citibank Home Depot account.

      3.  <u>McIntyre's Chase Credit Card Account</u>

Plaintiff McIntyre opened a credit card account issued by Chase Bank on September 20, 2007, with an account number ending in 3359. The Chase Account was governed by a Credit Card Agreement. (Berger ¶ 18; Ex. H, p. 4). McIntyre used his Chase Account and stopped making payments by January 13, 2010. The Account was charged off on August 31, 2010.

The Credit Card Agreement attached to Exhibit H contains an arbitration provision providing that either party may elect mandatory, binding arbitration, without the other's consent, of any claim, dispute or controversy by either party. The Agreement also contains a class action waiver, states it is governed by the Federal Arbitration Act, provides that Chase may assign the agreement, states that the arbitration provision survives, and has an anti-waiver clause. However, Exhibit H is a sample credit card agreement, which is dated 2007. Plaintiffs point out that Chase eliminated its arbitration agreement in 2009 for all current consumers holding its card as part of the *Ross* litigation. *Ross, et al. v. Bank of America, N.A. (USA), et al.*, S.D.N.Y. Case No. 05 CV 7116.

Pursuant to the Bill of Sale and Assignment executed on March 28, 2012, Chase allegedly sold and assigned the Chase Account to Midland Funding. (Berger ¶ 17; Exhibit F). All references to accounts involved in the sale and assignment are redacted. Exhibit G is an abstract of the data from the Excel file pertaining to McIntyre's Chase account.

On May 14, 2015, plaintiffs filed their Amended class action complaint against the Midland defendants alleging violations of the Fair Debt Collection Practices Act, 15,

U.S.C. § 1692 et seq. (FDCPA), and the Michigan Collection Practices Act, MCL § 445.251, et seq. (MCPA), in which plaintiffs allege the Midland defendants sought to collect post charge-off interest that had been waived by their original creditors. The defendants notified plaintiffs of their election to arbitrate the matter, but plaintiffs refused. The defendants therefore brought the present motion to compel arbitration.

## ANALYSIS

The FAA represents a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). When a contract contains an arbitration clause, there is a presumption in favor of arbitrability. *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 394 (6th Cir. 2014). When faced with a motion to compel arbitration, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

The preliminary issue to be decided in this case is whether there was an arbitration agreement governing the parties' relationship. It is not clear that the sample or embedded credit card agreements provided by defendants are the same agreements accepted by plaintiffs. The Citibank letter submitted in response to defendant's subpoena for credit card account records is telling of the lack of certainty that the evidence contains the proper agreements:

> . . . Enclosed are the **available statement copies** on Jacob Danley's Citi credit card account. Also enclosed is a **sample** of the Card Agreement in place on the date of charge off.

-6-

> Also enclosed are the **available statement copies** on Jeffrey McIntyre's Home Depot credit card account.  The Card Agreements are embedded in the statements.
>
> After a diligent search, we did not locate any documents responsive to your remaining requests.

(Exhibit C, p. 1, emphasis added).  The court is not in a position to analyze the terms of any arbitration agreement or class action waiver until it knows it is looking at the relevant agreements.  Unauthenticated sample credit card agreements, one dated many years after the credit card was first used and therefore accepted by plaintiff, is not the type of evidence the court can use to support an order compelling arbitration.

Next, the Purchase Agreement is the document that describes what exactly defendants acquired from Citibank and Chase, through Thunderbolt.  The Purchase Agreement allegedly conveys all rights, title and interests in and to each of the purchased accounts.  However, the Purchase Agreement has not been produced in evidence.  The court cannot determine if the credit card agreements binding the plaintiffs and the banks were conveyed to defendants along with the debts that were purchased.

There are other issues aside from the main ones described above, such as what impact the *Ross* settlement had on the Chase account, that similarly cannot be decided due to a lack of evidence or legal authority presented to the court.

## CONCLUSION

For the reasons stated above, defendants' motion to compel arbitration and dismiss action is DENIED WITHOUT PREJUDICE.

Dated:  December 1, 2015

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 1, 2015, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk