UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACOB J. DANLEY and
JEFFREY J. MACINTYRE, JR.,

       Plaintiffs,

                                                            Case No. 15-CV-11535

vs.

                                                             HON. GEORGE CARAM STEEH

ENCORE CAPITAL GROUP, INC.,
MIDLAND FUNDING, LLC, and
MIDLAND CREDIT MANAGEMENT, INC.,

       Defendants.
_____/

OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND DISMISS ACTION WITHOUT PREJUDICE [DOC. 39]

      Plaintiffs filed this case under the Fair Debt Collection Act and Michigan Collection Practices Act.  Defendants purchase credit card debts from banks and other debt buyers after the bank has charged off the debts.  Plaintiffs maintain that defendants did not purchase the right to add or reassess or collect interest once it had been waived and extinguished by the bank.  Nonetheless, defendants made efforts to collect the post charge-off interest from the debtors whose accounts they purchased.  For those debtors who did not pay in response to the telephonic and mail collection actions, defendants filed lawsuits against the debtors.

      In this lawsuit, plaintiffs allege defendants violated various sections of the federal and Michigan collection statutes by adding and attempting to collect interest that has been waived by the original owner of the debt.  The matter is presently before the court

on defendants' renewed motion to compel arbitration and dismiss the action without prejudice.

1. <u>Plaintiff Danley's Citibank Credit Card Account</u>

Plaintiff Jacob J. Danley opened a credit card account issued by Citibank on April 6, 2009, with an account number ending in 5718. Following the court's December 1, 2015 order denying defendants' original motion to compel arbitration, Citibank submitted a supplemental response to the Midland defendants' August 6, 2015 subpoena which includes a Declaration authenticating the Card Agreement that governs Danley's Citibank account. Attached to the Declaration of Catherine Reinecke, Vice President of Citibank, is an exemplar of the Card Agreement for the account that was sent to Danley when he opened the account in April 2009. The May 2009 statement transaction detail for the Danley account is also attached, and shows that Danley used the account after receiving the Card Agreement, which included an arbitration agreement.

The Card Agreement provides, "This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card." Danley used his Citibank Account by making purchases, and stopped making payments on the account on July 23, 2009. The account was charged off on March 16, 2010.

The exemplar credit card agreement contains an arbitration provision:

> Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

\* \* \*

>All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision.  All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. . . .

* * *

>Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.
>
>Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced.

The arbitration provision also contains a class action waiver provision: "Claims and remedies sought as part of a class action . . . are also subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis."

The arbitration agreement provides that it is "governed by the Federal Arbitration Act (the "FAA")."  (Ex. C, p. 214).  The Credit Card Agreement provides that Citibank may assign the Agreement: "We may assign any or all of our rights and obligations under this Agreement to a third party."  (Ex. C, p. 217).  The arbitration provision states that it "shall survive: (I) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity."  (Ex. C, p. 217).

On March 29, 2013, Citibank sold and assigned Danley's Citibank Account to Thunderbolt Holdings.  On the same day, Danley's Citibank Account was sold by Thunderbolt to Midland Funding by way of Assignment and Bill of Sale.  These documents are attached to the Michael Burger Declaration, which was submitted to plaintiffs as part of defendants' supplemental response on March 14, 2016.  Burger is the Senior Manager of Operations for Midland Credit Management, which is in turn the servicer and authorized agent for Midland Funding.  Midland Funding purchased "all rights, title and interests in and to each and every one of the Purchased Accounts described in the related Purchased Accounts File . . . " (Burger Declaration ¶ 3, and Exhibit A thereto).  Exhibit B to the Burger Declaration identifies Danley's Citibank Account as one of the accounts sold to Midland Funding.  The Account Purchase Agreement is attached as Exhibit C to the Burger Declaration.

    2. <u>Plaintiff McIntyre's Citibank Home Depot Credit Card Account</u>

Jeffrey J. McIntyre, Jr. opened a Home Depot branded credit card account issued by Citibank on September 25, 2003, with an account number ending in 8762.  The Citibank Home Depot Account was governed by a Credit Card Agreement.  (Berger Dec. ¶ 12).  Citibank's Supplemental Response includes a Declaration authenticating the Card Agreement that governs McIntyre's Citibank Home Depot Account.  (Reinecke Declaration ¶¶ 5, 6).  Attached as Exhibit 3 to the Reinecke Declaration is a copy of the January 2009 statement transaction detail that was sent to McIntyre.  This statement contains the complete Card Agreement governing McIntyre's Home Depot Credit Card Account, including an arbitration agreement.  Exhibit 4 includes the statement transaction detail for March and April 2009, which show that McIntyre continued to use

-4-

the Account. McIntyre stopped making payments on the Citibank Home Depot Account by August 31, 2009. The Account was charged off on April 6, 2010.

The Citibank Home Depot Account Credit Card Agreement contains an arbitration provision that is the same as that contained in the Danley Citibank Account quoted above. The Agreement also contains the same language in its class action waiver, Federal Arbitration Act, Assignment, and arbitration survival provisions.

A true and correct copy of the Bill of Sale and Assignment between Citibank and Midland Funding, dated March 23, 2011, is attached as Exhibit G to the Burger Declaration. The relevant portion of the Final Electronic File referenced in the Bill of Sale and Assignment identifying McIntyre's Citibank Home Depot Account is attached as Exhibit H to the Burger Declaration. The Purchase and Sale Agreement is Exhibit I, and shows Midland Funding purchased "all right, title and interest of Bank in and to the Accounts."

    3. <u>McIntyre's Chase Credit Card Account</u>

Plaintiff McIntyre opened a credit card account issued by Chase Bank on September 20, 2007, with an account number ending in 3359. The Chase Account was governed by a Credit Card Agreement. (Berger ¶ 17). Between the time the Account was opened and August 31, 2010 when the Account was charged off by Chase, Chase issued five changes to the Cardmember Agreement. (Burger ¶ 18). None of the changes altered the Arbitration Agreement or the class action waiver provision.

The Credit Card Agreement provides, "Any use of your account is covered by this agreement. . . . Whether you use your account or not, you will be bound by this agreement unless you cancel your account within 30 days after receiving your card and

you have not used your account for any purpose. (Exhibit O to Burger Declaration). McIntyre used his Chase Account and stopped making payments by January 13, 2010. The Account was charged off on August 31, 2010.

The Chase Credit Card Agreement contains an arbitration provision providing that either party may elect mandatory, binding arbitration, without the other's consent, of any claim, dispute or controversy arising from or relating to the Cardmember Agreement. The Chase Credit Card Agreement also contains a class action waiver, states it is governed by the Federal Arbitration Act, provides that Chase may assign the agreement, states that the arbitration provision survives, and has an anti-waiver clause.

A true and correct copy of the Bill of Sale and Assignment is attached as Exhibit K to the Burger Declaration. The Final Data File referenced in the Bill of Sale identifies McIntyre's Chase Account as one of the accounts sold to Midland Funding. (Exhibit L to Burger Declaration). The Account Purchase Agreement is attached as Exhibit M and shows that Midland Funding purchased "all right, title and interest in and to" McIntyre's Chase Account. (Burger Declaration ¶ 13, Exhibit M).

On August 24, 2015, plaintiffs filed their Second Amended class action complaint against the defendants alleging violations of the Fair Debt Collection Practices Act, 15, U.S.C. § 1692 et seq. (FDCPA), and the Michigan Collection Practices Act, MCL § 445.251, et seq. (MCPA), in which plaintiffs allege the defendants sought to collect post charge-off interest that had been waived by their original creditors. The defendants notified plaintiffs of their election to arbitrate this matter but plaintiffs refuse to do so. On September 4, 2015 defendants filed their motion to compel arbitration and to dismiss the action without prejudice. On December 1, 2015 the court entered an order denying

the motion without prejudice. The court permitted defendants to file a renewed motion to compel arbitration which is presently before the court.

## ANALYSIS

The FAA represents a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). When a contract contains an arbitration clause, there is a presumption in favor of arbitrability. *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 394 (6th Cir. 2014). When faced with a motion to compel arbitration, "the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Securities, Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

Plaintiffs assert that defendants violated federal and state law by allegedly seeking to collect post charge-off interest that had been waived by plaintiffs' original creditors. In order to resolve the issue of arbitrability of the plaintiffs' claims, the court must address plaintiffs' challenges to the validity of the agreement to arbitrate contained in the credit card agreements. The Supreme Court in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) held that this is the only "type of challenge relevant to a court's determination whether the arbitration agreement at issue is enforceable." *Id.* at 70. A court is not to consider challenges that question "the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions render the whole contract invalid." *Id.*

I. <u>Evidentiary Burden Regarding Original Contract Documents</u>

Plaintiffs first question whether the exemplar credit card agreements provided by defendants are enforceable because defendants have not produced the original agreements signed by the plaintiffs. The last time the court considered the issue it was not convinced that the sample or embedded credit card agreements provided by defendants were the same agreements accepted by plaintiffs. Defendants have now produced declarations from the custodian of the accounts of the original creditor, in the case of Citibank, who in turn attached the relevant exemplar contract documents, as well as copies of actual statement transaction details from plaintiffs' credit card accounts. In the case of the Chase account, defendants provide the Affidavit of Sale of Account by Original Creditor, which attests to the validity of the records that make up the accounts, including an exemplar cardmember agreement and actual statement transaction details. (Burger Decl. Ex. O). Plaintiffs have not come forward with any evidence to rebut that the agreements that have been produced are the same as those entered between plaintiffs and the original creditors. See, e.g., *Coppock v. Citigroup, Inc.*, 2013 U.S. Dist. LEXIS 40632, *12-13 (W.D. Wash. March 22, 2013) (accepting an "exemplar" agreement where the plaintiff "produced no evidence that the 2001 agreement (an exemplar of which Citi submitted with its motion) is not the agreement that governed her account.")

Defendants argue that the agreements submitted by defendants are not required to be authenticated, as argued by plaintiffs. A Rule 56 standard of proof does not apply to defendants' motion to compel arbitration, and furthermore the current Rule 56 does not require authentication. See, e.g., *Townsend v. Rhodes*, 2015 U.S. Dist. LEXIS

-8-

129943, *10 n. 8 (E.D. Mich. Sep. 28, 2015) ("in light of the 2010 changes to Rule 56, authentication is no longer required."). Even so, Ms. Reinecke has authenticated Danley's and McIntyre's Citibank Card Agreements, and Mr. Burger has provided authentication of McIntyre's Chase Card Agreement, with their declarations for purposes of satisfying the business record exception to the rule against hearsay.

The arbitration clauses in the credit card agreements, which the court accepts at this stage as being those governing the parties' relationship, contain delegation clauses. The delegation clauses provide that claims relating to the debtors' account, a prior related account, or the parties' relationship are subject to arbitration, including claims regarding application, enforceability and interpretation of the agreement as a whole. Plaintiffs do not mention, let alone challenge the delegation provision. The Supreme Court held that such a failure requires the Court to "treat it [the delegation provision] as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole to the arbitrator." *Rent-A-Center*, 561 U.S. at 72-73.

II. Purchase of Credit Card Receivables

Plaintiffs next argue that defendants cannot invoke the arbitration agreements in the credit card agreements because "[t]he only thing these defendants ever bought were the rights to debts." The parties go on to argue the applicability of the UCC to the sale of credit card receivables and whether or not the terms of the credit card agreements follow the sale of the receivables. This is an example of an issue challenging the application, enforceability or interpretation of the credit card agreement and the arbitration provision, and as such it is distinctly an issue for the arbitrator to

decide.  A challenge to the applicability of the arbitration provision has been delegated to the arbitrator, as discussed in the previous section of this opinion.

III. Chase Purchase Agreement Section 4

Plaintiffs point to language in the Chase Purchase Agreement between Chase and Midland Funding, which states "Purchaser agrees that it will not attempt to enforce any rights it may otherwise have under any arbitration clauses that may appear in Seller's Cardholder Agreements."  (Burger Declaration, Exhibit M, Section 4, p. 9).  This language appears in the section regarding "Representations and Warranties of Purchaser".  Defendants point out that plaintiffs omit the previous page of the agreement, which provides "All representations and warranties made in respect of this Section 4 shall survive the execution and delivery of this Agreement until the second anniversary of the applicable Closing Date for which such representations and warranties were made by Purchaser."  (Exhibit M, Section 4(h), p. 8).  The closing date for the sale of McIntyre's Chase Account to Midland Funding was March 28, 2012. (Exhibit K).  Therefore, according to defendants, Midland Funding agreed not to enforce McIntyre's arbitration agreement for a two-year period following the closing date, which ended on March 28, 2014.

The issue whether defendants acquired Chase and Citibank's rights to invoke the arbitration clause when they purchased the plaintiffs' debts is one that has been delegated to the arbitrator to decide.

CONCLUSION

For the reasons stated above, defendants' motion to compel arbitration and dismiss action without prejudice is GRANTED.

Dated: May 16, 2016

<u>s/George Caram Steeh</u>
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 16, 2016, by electronic and/or ordinary mail.

<u>s/Marcia Beauchemin</u>
Deputy Clerk

---